IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NAOMI MILLER,                          §
                                       §
                    Plaintiff,         §
                                       §  Civil Action No. 3:07-CV-1269-D
VS.                                    §
                                       §
WACHOVIA BANK, N.A., et al.,           §
                                       §
                    Defendants.        §

MEMORANDUM OPINION
AND ORDER

Defendant Carla Jones's ("Jones's") motion to dismiss requires the court to decide whether an employee who has not exercised supervisory authority over a coworker can be held individually liable to the coworker for intentional race discrimination or retaliation under 42 U.S.C. § 1981.  Concluding that she cannot and that plaintiff Naomi Miller ("Miller") has failed to state a cognizable § 1981 claim against Jones, the court grants Jones's motion and dismisses the § 1981 claim against her.

I

In 2006 Miller, who is Caucasian, began working as a mortgage loan underwriter for defendant Wachovia Mortgage Corp. ("WMC") under the supervision of defendant Martha Hester ("Hester"), who is African-American.[1]  Miller's work required her to interact with

---

[1]For purposes of deciding defendants' motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Jones, another African-American WMC employee, who was a mortgage loan closer. From the beginning of her employment, Jones berated Miller with racial epithets, even in the presence of other WMC employees. While Jones was in the process of applying for an underwriter position within WMC, Jones repeatedly threatened to get Miller fired. Jones also made numerous threatening gestures and remarks to Miller in the hallway, parking lot, and other closed areas, causing Miller to change her routes when moving about the office to avoid Jones.

Within a few weeks after Miller commenced her employment, Jones falsely accused Miller of committing an error in underwriting one of the loans. The incident culminated in Jones's throwing a fist in Miller's face while Jones screamed in a threatening manner. Miller reported this incident, as well as Jones's prior harassment, to Judy Whitaker ("Whitaker"), a WMC human resources representative, explaining to Whitaker that she believed she was being discriminated against based on her race. Miller also expressed her fear of retaliation for reporting the discrimination. When Hester discovered that Miller had complained to Whitaker about racial discrimination, Hester told Miller that she betrayed Hester by complaining directly to a human resources representative. Hester directed Miller to report discriminatory conduct to her or to Hester's immediate supervisor, Mary Rzucidlo ("Rzucidlo"). During this conversation between Hester and Miller, Jones entered

and made multiple derogatory remarks to Miller, without remonstrance by Hester. Thereafter, Rzucidlo required Miller to prepare a written statement about the discrimination she had reported to Whitaker. In this statement, Miller reiterated her fear of retaliation.

Following Miller's complaints, Hester began to make unsubstantiated criticisms of Miller for various aspects of Miller's duties as an underwriter. Miller reported this criticism to Whitaker. Jones continued to direct discriminatory and threatening remarks to Miller, which Miller reported to Rzucidlo, but Jones's conduct did not stop. Jones subjected other Caucasian employees at WMC to similar treatment. Although these other Caucasian employees also complained of Jones's conduct to Rzucidlo, Jones was never corrected.

Miller was later assigned to underwrite a mortgage loan for which she did not have underwriting authority. Hester insisted that Miller underwrite the mortgage and later disciplined Miller for insubordination in refusing to underwrite the mortgage. In connection with the discipline, Hester required that Miller attend a meeting with her and another WMC manager that lasted for several hours. Miller was not allowed to leave the meeting and was compelled to sign a false statement concerning the underwriting of the mortgage or face immediate termination.

Psychologically and physically shaken by her treatment at WMC,

Miller took a leave of absence to recover her health. While on leave, Miller, with the help of Whitaker and another WMC employee, filed a charge of race discrimination with the Equal Employment Opportunity Commission. Six days after WMC received notice of the filing, WMC terminated Miller's employment. WMC contended that Miller was a probationary employee who was not entitled to leave, and that WMC needed to fill Miller's underwriting position. Jones, however, who was in a comparable position, was allowed to take medical leave.

Miller later filed the instant suit against WMC, Wachovia Bank, N.A. ("Wachovia Bank"), Hester, and Jones for, *inter alia*, unlawful discrimination and retaliation, in violation of 42 U.S.C. § 1981. Miller also asserted a fraud claim against Wachovia Bank and WMC, contending that they falsely represented to her that she would be entitled to certain bonuses, which she never received, for her work as an underwriter.

Wachovia Bank and WMC moved to dismiss Miller's fraud claim under Fed. R. Civ. P. 12(b)(6), contending that the complaint failed to plead fraud with particularity, as required by Rule 9(b). Jones also moved to dismiss Miller's § 1981 claim against her under Rule 12(b)(6) on the ground that § 1981 does not permit recovery against a non-supervisor coworker. A day after responding to Wachovia Bank and WMC's motion to dismiss, Miller filed an amended complaint in which she attempted to plead her fraud claim with

greater particularity. Jones then refiled her motion to dismiss directing the same arguments contained in her initial motion to dismiss to Miller's first amended complaint. Wachovia Bank and WMC have not moved to dismiss the first amended complaint. Because Wachovia Bank and WMC did not renew their motion to dismiss after Miller filed her first amended complaint, their September 6, 2007 motion to dismiss is moot, and the court denies it without prejudice. The court also denies as moot Jones's September 6, 2007 motion to dismiss. The court therefore need only address Jones's October 3, 2007 motion to dismiss.

## II

In her Rule 12(b)(6) motion, Jones contends that § 1981 does not support a cause of action against a non-supervisor employee. Miller responds that the Fifth Circuit has recognized third-party liability under § 1981 and has never defined the outer boundaries of such liability. Jones concedes these points, but she insists that no court has ever recognized third-party liability of a mere coworker, and that the Fifth Circuit's statements concerning third-party liability under § 1981 suggest that it is only available against supervisors or those who have exercised managerial authority.

### A

In deciding Jones's motion, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to

- 5 -

the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* (quoting *Bell Atl.*, 127 S. Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S. Ct. at 1964-65 (citations, quotation marks, and brackets omitted).

B

Section 1981 protects a person's right "to make and enforce contracts . . . as is enjoyed by white citizens." In 1991 Congress expanded the remedies available under § 1981 by widening the definition of "make and enforce contracts": "[T]he term 'make and enforce contracts' includes the making, performing, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

§ 1981(b); *see Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002).[2]  Section 1981's focus on the right to contract and the "contractual relationship" would seem to permit a cause of action for racial discrimination against the contracting parties only (e.g., in the employment context, the employer).  *See Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).  But since the Fifth Circuit's decision in *Faraca v. Clements*, 506 F.2d 956, 957 (5th Cir. 1975), the court has recognized a right of recovery under § 1981 against individuals who are not privy to an actual or potential employment contract.

In *Faraca* the director of the Georgia Retardation Center refused to hire the plaintiff because he was married to a black woman.  *Id.* at 958.  The court noted that "[t]echnically, the State of Georgia was the prospective employer and only it would be in a position to refuse to enter into a contract," *id.* at 959, but it affirmed the district court's damage award under § 1981 against the director individually.  *Id.* at 960.

Later Fifth Circuit panels have narrowed *Faraca*'s holding, although they have declined to define comprehensively the universe

---

[2]In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Supreme Court held that post-contract-formation allegations of racially discriminatory conduct were not actionable under § 1981 because it only governs racial discrimination in the "making" of contracts and the right to "enforce" the contract.  *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 n.20 (5th Cir. 1997).  Through the Civil Rights Act of 1991, Congress expanded § 1981 to include post-contract formation claims.  *E.g., id.*

of third parties who can be liable under § 1981.  In *Bellows* the plaintiff sued a non-employee of the plaintiff's employer under § 1981 for the individual's racially motivated efforts to interfere with the plaintiff's employment contract.  *Id.* at 270-72.  The court noted, "As a threshold matter, we observe that this Court has not yet decided whether a plaintiff has a cause of action under section 1981 against a third party for interference with the plaintiff's right to make and enforce contracts . . . .  Thus, we express some doubt as to whether [the plaintiff] has, in the first instance, presented a cognizable claim under section 1981."  *Id.* at 274.  Although the *Bellows* panel acknowledged the *Faraca* decision, it stated, "The director in *Faraca* was only nominally a third party.  In substance, because he was acting on behalf of the state when he decided not to hire Faraca-—thus making his hiring decision indistinguishable from that of the state-—the director and the state were essentially one and the same."  *Id.*  "Since *Faraca*, this Court has not offered any opinion as to whether *all* third party interference claims are actionable under section 1981, and we decline to rule on this issue today."  *Id.*  Instead, the court reversed the jury award against the individual on other grounds. *Id.* at 274-77.

The Fifth Circuit faced the same issue of third-party liability under § 1981 in *Felton*, where the plaintiff sued his direct supervisor for workplace racial harassment.  *Felton*, 315

F.3d at 474, 484.  Although the defendant exercised supervisory authority over the plaintiff, the court expressed doubt about whether the plaintiff had stated a valid claim under § 1981. "First, it is not clear whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim.  Obviously, [the plaintiff's] contractual relation was not with [the defendant]; it was with the State of Mississippi." *Id.* at 480.  The court concluded, "In light of *Bellows*' limited reading of *Faraca*, it would appear [the defendant] could *only* be amendable to § 1981 liability *if* he were 'essentially the same' as the State for purposes of the complained-of conduct.  He does *not* appear to be." *Id.* at 480-81.  Despite the court's conclusion that the defendant supervisor did not appear to be "essentially the same as the State for purposes of the complained-of conduct," the court rested its holding that the defendant could not be liable on qualified immunity grounds.  *Id.* at 481-89.

A year later, the Fifth Circuit revisited the same issue in *Foley v. University of Houston System*, 355 F.3d 333 (5th Cir. 2003).  In *Foley* two university professors sued a number of their colleagues under § 1981 for racial retaliation in their decision to deny one plaintiff a promotion to full professor and to remove the other from her position as department chair.  *Id.* at 335-37.  After a review of *Faraca*, *Bellows*, and *Felton*, the court permitted the plaintiffs to proceed against their colleagues individually because

they had exercised control in the employment decisions at issue, and thus were, indistinguishable with the plaintiffs' employer in those decisions. "[T]he district court found genuine issues of material fact as to whether the [defendants] exercised control over the faculty positions and titles held by [the plaintiffs]. If so, the [defendants] were 'essentially the same' as [the University of Houston] for purposes of the retaliatory conduct alleged in this case." *Id.* at 337. The court declined the opportunity to define more fully the limits of third-party liability under § 1981. *Id.* at 338 ("[W]e do not believe that this is the proper case in which to decide the outer boundaries of § 1981 liability as it applies to individual non-employer defendants, nor to attempt to catalogue every fact situation which might subject an individual to such liability." (footnote omitted)).

Miller cites *Celestine v. Aaron Rents, Inc.*, 2007 WL 2703133 (W.D. La. Sept. 17, 2007), as supporting her claim against Jones individually. In denying summary judgment to an employee defendant sued under § 1981, the *Celestine* court rejected the defendant's contention that individuals cannot be liable under § 1981. *Id.* at *1. But the court's brief opinion neither reveals the employee-defendant's position within the company nor details the specific acts of discrimination of which the plaintiff complained. The court did not mention the test repeated by the Fifth Circuit that § 1981 liability does not run to an employee unless the employee

was "essentially the same" as the employer in the acts that form the basis of the plaintiff's complaint.

Thus while the scope of non-employer liability under § 1981 remains unsettled in the Fifth Circuit, some relevant principles have been established. An employee who exercises control over the plaintiff with respect to an employment decision may be individually liable if the employee was "essentially the same" as the employer in exercising this authority. *See Foley*, 355 F.3d at 337-38. Although the defendants in *Foley* were technically coworkers of the plaintiffs, they exercised managerial authority over the plaintiffs in voting to deny one of the plaintiffs a promotion and voting to oust the other as department chair, the very acts that formed the basis of the plaintiffs' § 1981 claims. Another principle gleaned from *Felton* is that a supervisor employee who was personally involved in racial harassment is not liable to the plaintiff under § 1981 unless the supervisor was "essentially the same" as the employer in the harassing conduct.

Thus recognizing a claim under § 1981 against a non-supervisor employee who has never exercised managerial authority over the plaintiff would not find clear support in current Fifth Circuit law. Based on the Fifth Circuit's attempts to restrict the reach of § 1981 non-employer liability after *Facra*, and the decisions of courts outside this circuit discussed below, the court declines Miller's invitation to expand the scope of § 1981 liability to

encompass claims against mere coworkers.

C

The weight of authority outside this circuit indicates that § 1981 does not permit a claim against a non-supervisor coworker. In *Tnaib v. Document Technologies, LLC*, 450 F.Supp.2d 87 (D.D.C. 2006), the plaintiff brought § 1981 claims against his coworker for racial retaliation and a hostile work environment. *Id.* at 89. The defendant coworker moved to dismiss the complaint on the basis that the plaintiff had failed to state a cognizable claim under § 1981. *Id.* at 91-92. The court began with the principle that "[s]ection 1981 does not create a grounds for a cognizable claim against a co-worker" but "[i]ndividuals with supervisory authority, however, may be held liable under § 1981." *Id.* at 92. The court denied the motion to dismiss because the complaint adequately pleaded that the defendant, although a non-supervisor, "exercised supervisory authority over Plaintiff on a daily basis." *Id.* (quotation marks omitted).

In another district court decision, the plaintiff asserted a hostile work environment claim against her work mentor, who then moved to dismiss under Rule 12(b)(6), arguing that § 1981 does not permit a claim against non-employers. *Hicks v. IBM*, 44 F.Supp.2d 593, 594 (S.D.N.Y. 1999). The court denied the motion because the plaintiff had pleaded that the defendant "exercised supervisory authority over Plaintiff." *Id.* at 597. But the court was careful

- 12 -

to restrict individual liability under § 1981. "[I]ndividual liability under § 1981 is not without limits. In each of the cases that have allowed individual liability, the individuals have been supervisors who were personally involved in the discriminatory activity." *Id.* "That limitation gives meaning to the statutory 'make and enforce' language; those who can be held liable are those who have the authority to act on behalf of an employer in making and enforcing the employer's contracts." *Id.* Drawing support from the Fifth Circuit's *Bellows* decision, the court concluded: "Thus, individuals should be held liable under § 1981 only when they are essentially one and the same with the employer; that is when they have the capacity to make and enforce the contract between the employer and the employee." *Id.*

The court in *Leige v. Capital Chevrolet, Inc.*, 895 F. Supp. 289 (M.D. Ala. 1995), denied the defendants' summary judgment motion in a § 1981 wrongful discharge action because the defendants, as the general manager and chief executive officer of the company, were in positions to influence employment decisions at the plaintiff's company. *Id.* at 294. And "[s]upervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981." *Id.* at 293.

Another line of cases focuses on the absence of a connection between the employment decision at issue and the coworker's authority, so that without some special allegation of control a

coworker cannot be liable under § 1981.

In *Burstein v. Emtel, Inc.*, 137 Fed. Appx. 205 (11th Cir. 2005) (per curiam), the plaintiff-physician sought to recover under § 1981 from the assistant director physician of his hospital-employer on the basis that the defendant "influenced [a higher supervisor's] decision not to recommend [the plaintiff] for employment." *Id.* at 208. The court affirmed the granting of summary judgment in favor of the defendant, because "[t]he record [did] not suggest that [the defendant] participated in the decision of [the employer] not to offer [the plaintiff] a contract," though the defendant had previously, after an argument with the plaintiff, threatened to get the plaintiff disciplined. *Id.* at 208.

Similarly, in another § 1981 failure-to-renew-an-employment-contract claim, the Tenth Circuit affirmed a district court's judgment as a matter of law in favor of an individual defendant who had been a supervisor over the plaintiffs, because there was no evidence that she influenced the hiring decisions at issue. *Sims v. KCA, Inc.*, 28 F.3d 113, 1994 WL 266744, at *7 (10th Cir. June 17, 1994) (per curiam) (unpublished table decision). "[I]t is clear that regardless of whether [the defendant] harbored discriminatory intent, if, as evidenced by the jury verdict, her intent did not adversely influence [the employer], plaintiffs suffered no injury, and [the defendant's] acts are not legally cognizable under [§] 1981." *Id.*

A surgeon in *Mbadiwe v. Union Memorial Regional Medical Center, Inc.*, 2005 WL 3186949 (W.D.N.C. Nov. 28, 2005), sued, among others, a coworker nurse under § 1981 after the plaintiff's employer decided to restrict his clinical rights at the hospital. *Id.* at *1. Although acknowledging that non-employer individuals can be liable under § 1981 when they direct or participate in the discriminatory act, the court stated, "Section 1981 does not . . . create grounds for a cognizable claim against a co-worker." *Id.* at *2. The court dismissed the plaintiff's claim against the co-worker nurse, reasoning,

> Plaintiff does not allege herein that [the defendant], a nurse, played any role in the decision to restrict his privileges or that she had the authority to participate in that decision. At most, Plaintiff alleges that [the defendant] is a co-worker who provided information to a decision-making body. This is insufficient to state a claim against her under section 1981.

*Id.*

In *Johnson v. Resources for Human Development, Inc.*, 843 F. Supp. 974 (E.D. Pa. 1994), the court dismissed the plaintiff's § 1981 wrongful discharge and racial harassment claim against two other employees because there was "no affirmative link to causally connect the[ ] defendants with the actions complained of[.]" *Id.* at 978-79.

Other courts have made broader statements concerning the availability of non-employer liability under § 1981. *See*, *e.g.*,

*Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) ("[D]irectors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be liable."). But these cases have always involved suits against supervisors or those who have exercised managerial authority over the plaintiff. *See id.* (reversing district court's dismissal of § 1981 suit against members of university hiring committee because these individuals were alleged to have participated in decision to deny plaintiff tenure). The court is unaware of, and Miller has not cited, a decision in which a court has allowed a § 1981 claim to proceed against an employee coworker who was neither a supervisor nor exercised supervisory authority. The cases that have addressed the issue suggest that a § 1981 suit against a mere coworker is invalid.

The court finds particularly persuasive the reasoning of *Hicks*, in which the court concluded that § 1981's focus on the right to contract and the contractual relationship limits § 1981 non-employer liability to "those who have authority to act on behalf of the employer in making and enforcing the employer's contracts." *Hicks*, 44 F.Supp.2d at 597. In other words, because those employees who are neither supervisors nor exercise supervisory authority are not in a position to act on behalf of the

employer to make and enforce the company's employment contracts, it would be inconsistent with the language of § 1981 itself to permit plaintiffs to recover against them.

### D

Based on these principles, the court analyzes Miller's complaint to determine whether she has stated a cognizable claim against Jones under § 1981. Construing the complaint in a light most favorable to Miller, she asserts two different claims of intentional discrimination. First, she alleges that she was retaliated against after she complained of racial discrimination. Second, Miller avers a claim for racial harassment in the workplace, i.e., that Jones's harassment created a hostile work environment. Apart from the question whether a non-employer may be individually liable, these claims are both valid causes of action under § 1981. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004) (recognizing hostile work environment claim as legitimate cause of action under § 1981); *Foley*, 355 F.3d at 339 ("We hold that an employee's claim that he was subjected to retaliation because he complained of race discrimination is a cognizable claim under § 1981."). The court will review each claim separately.

### 1

The elements of a retaliation claim under § 1981 are "(1) that the plaintiff engaged in activities protected by § 1981; (2) that

an adverse employment action followed; and (3) that there was a causal connection between the two." *Foley*, 355 F.3d at 339. The Fifth Circuit has defined "adverse employment action" as "an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 340. But the Supreme Court has recently modified this element to mean what "a reasonable employee would have found [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks omitted).[3]

In light of *Burstein*, *Sims*, *Mbadiwe*, and *Johnson* discussed *supra* at § II(C), the plaintiff must adequately plead that the defendant had the capacity to bring about the conduct that forms the basis of the plaintiff's complaint. At first blush, the recent change in the adverse employment action element appears to support Miller's § 1981 claim against Jones for retaliation. Under the former standard of "adverse employment action," Miller would be

_____

[3]Although *Burlington Northern* involved a claim under Title VII of the Civil Rights Act of 1964, "[s]ection 1981 claims are analyzed under the same framework as Title VII claims." *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007); *see also Holloway v. Dep't of Veterans Affairs*, 244 Fed. Appx. 566, 567 (5th Cir. 2007) (per curiam) (recognizing *Burlington Northern*'s modification of the "adverse employment action" element in the Title VII context).

required to plead that Jones had authority to influence an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating. Although *Burlington Northern* may have lowered the bar in terms of what constitutes an adverse employment action——thus making it more likely that Jones had the capacity to influence such a decision——*Burlington Northern*'s adverse employment action standard is still directed at actions of management. Immediately after articulating the new standard, the Supreme Court stated that a retaliation claim aims at preventing those "*employer actions* that are likely 'to deter victims of discrimination from complaining to the EEOC.'" *Burlington N.*, 126 S.Ct. at 2415 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (emphasis added)). Thus the focus of adverse employment actions remains on "employer actions," not on the actions of lower-level employees, even though employer actions that constitute "adverse employment actions" no longer need be "ultimate employment actions." Moreover, the Supreme Court referred to employer actions that would deter a person from filing a complaint with the EEOC, but only employers are liable under the remedies available through the EEOC under Title VII; thus the retaliatory act must be tied to the actions of management.

The examples the *Burlington Northern* Court gave of adverse employment actions that would or would not constitute actions that a "reasonable employee would have found . . . materially adverse"

also support the conclusion that the concept of adverse employment action is still tethered to actions of management: a work schedule change, a supervisor's refusal to invite an employee to lunch, and excluding an employee from a weekly training lunch. *Id.* at 2415-16. And the Court ultimately held that the facts of the case before it——the plaintiff had been reassigned from forklift duty to standard track laborer tasks and had served a 37-day suspension without pay——supported a retaliation claim. *Id.* at 2416. Here again, both retaliatory acts——a changing of work duties and serving a suspension without pay——are actions that only management could bring about. Thus even if an adverse employment action need no longer be "an ultimate employment decision," it still requires an action that only management could effect.

a

Turning to the particulars of Miller's complaint, the first act that constitutes an adverse employment action under the standard of *Burlington Northern* is her termination of employment. But Miller nowhere avers that Jones had authority to fire Miller or even to influence WMC's decision to terminate her. Under *Burstein*, *Sims*, *Mbadiwe*, and *Johnson*, the absence of a causal connection between Jones and the adverse employment action at issue, here, her termination, is fatal to Miller's complaint. Even if Jones had furnished those with the authority to terminate Miller's employment the information on which the termination decision was based, such

an action was deemed insufficient in *Mbadiwe* to establish a causal connection between the defendant and the employment decision. Miller does allege that Jones threatened to get her fired. But this allegation, even if true, is insufficient to establish that Jones was involved in the decision to fire Miller. Miller's allegation that Jones threatened to get her fired is similar to the plaintiff's allegation in *Burstein*——that the defendant had threatened to get the plaintiff disciplined——which was insufficient to establish that the defendant actually influenced the decision not to renew the plaintiff's employment contract.

Under the *Bell Atlantic* pleading standard, Miller must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.,* 127 S. Ct. at 1974. Miller's complaint alleges that when Jones threatened to bring about Miller's termination, Jones was in the process of applying for an underwriter position, which Miller already held. Thus it appears from the complaint that Jones, who was a mortgage closer at the time, was in a lower-level position within WMC than was Miller. Without alleging more than that Jones made threats to get Miller fired, Miller has failed to state a claim for relief on the basis of her termination because it is implausible on the face of her complaint that Jones had the capacity to influence WMC's firing decisions.

The complaint alleges other acts that rise to the level of an employment action under *Burlington Northern*——such as being

disciplined for refusing to underwrite a file for which she had no underwriting authority and being forced to sit through a two-hour meeting——but Miller does not allege that Jones had any role in these actions. Miller does complain of Jones's many threatening and racially charged remarks, but these statements do not of themselves rise to the level of an adverse employment action because they do not concern an action of the employer. The court draws support for this conclusion from the elements of a discrimination claim based on racial comments. "In order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) *made by an individual with authority over the employment decision at issue*; and (4) related to the employment decision." *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007) (internal quotation marks and brackets omitted) (emphasis added). Because Miller's complaint does not allege that Jones had authority over any employment decision, her remarks, however threatening and racially motivated, do not constitute an actionable retaliation claim because they do not qualify as an adverse employment action.

Assuming *arguendo* that Miller's complaint sufficiently alleges that Jones did have authority to influence an adverse employment action, the complaint still fails to state a claim for retaliation

against Jones because the complaint does not establish that Jones was "'essentially the same' as [WMC] for purposes of the complained-of conduct." *Felton*, 315 F.3d at 481. In *Felton*, where the plaintiff asserted a hostile work environment claim against his supervisor and alleged that the supervisor was personally involved in the complained-of conduct, the court nevertheless concluded that the supervisor did not appear to be the same as the employer with respect to the acts on which the plaintiff's claim was based. *Id.* If a supervisor, who is more representative of the company than is a lower-level employee such as Jones, was not deemed indistinguishable from the employer in the discriminatory conduct, it would be unreasonable to conclude that Jones, who is not alleged to have had any supervisory authority over Miller, was "essentially the same" as WMC at any relevant point in time.

2

For similar reasons, Miller has failed to state a hostile work environment claim against Jones.

To state a prima facie case for racial harassment that created a hostile work environment, the plaintiff must establish the following:

> (1) the employee belongs to a protected group;
> (2) the employee was subjected to unwelcome
> harassment; (3) the harassment complained of
> was based on race; (4) the harassment
> complained of affected a term, condition or
> privilege of employment; [and] (5) *the*
> *employer knew or should have known of the*
> *harassment in question and failed to take*

- 23 -

> *prompt remedial action.*

*Felton*, 315 F.3d at 484 (quotation marks and brackets omitted) (emphasis in original). Highlighting the fifth element, the *Felton* panel remarked, "The fifth element (directed at the *employer*) presents an obvious incongruity for a § 1981 claim against an individual." *Id.* Indeed, a hostile work environment claim, like a retaliation claim is directed at the action of the employer, because only the employer is ultimately responsible for the environment of the workplace. The elements of this claim contemplate that the person responsible for the "unwelcome harassment" will not be identifiable with the employer, or else the fifth element would be mere surplusage. The *Felton* court noted that an alternative claim for a hostile work environment without the fifth element is available against "a supervisor with immediate (or successively higher) authority over the harassment victim," *id.*, but as discussed in *supra* at § II(D)(1)(a), Miller's complaint fails to allege that Jones had any supervisor authority over Miller. In fact, it appears from the complaint that Jones was in a lower position than was Miller at WMC.

Again, even assuming *arguendo* that Miller's complaint has adequately pleaded that Jones had supervisor authority over her, there remains the additional § 1981 hurdle that Jones's conduct be indistinguishable from that of WMC. For the reasons stated *supra* at § II(D)(1)(a), the court concludes that Miller has failed

adequately to plead facts to support the conclusion that Jones was "essentially the same" as WMC with respect to Miller's allegations of harassment.

*     *     *

For the foregoing reasons, the court grants Jones's October 3, 2007 motion to dismiss and dismisses with prejudice Miller's § 1981 claims against Jones. The court denies without prejudice as moot the September 6, 2007 motion to dismiss of Wachovia Bank and WMC. The court also denies as moot Jones's September 6, 2007 motion to dismiss.

**SO ORDERED.**

March 7, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE